# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | | |
|---|---|---|
| Allstate Indemnity Company, | ) | Civil Action No. 1:13-00690-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Roosevelt Tilmon, Mona Tilmon and | ) | **ORDER AND OPINION** |
| AmyMelissa Davis, Individually and as | ) | |
| Legal Guardian for K.K., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Allstate Indemnity Company ("Plaintiff") filed this declaratory judgment action against Defendants Roosevelt Tilmon, Mona Tilmon, and AmyMelissa Davis ("Davis"), individually and as legal guardian for K.K., seeking a declaration by the court that Deluxe Homeowners Insurance Policy No. 9 30 260240 01/26 issued to Roosevelt Tilmon (the "Tilmon Policy") neither provides coverage for claims asserted in an Underlying Lawsuit nor requires Plaintiff to defend or indemnify insureds Roosevelt Tilmon and Mona Tilmon. (ECF No. 1 at 2 ¶ 8.)

This matter is before the court on a motion by Plaintiff for summary judgment pursuant to Fed. R. Civ. P. 56 ("Rule 56 motion"). (ECF No. 21.) Davis opposes Plaintiff's Rule 56 motion asserting that the court should find that coverage exists under the Tilmon Policy. (ECF No. 23.) For the reasons set forth below, the court **GRANTS** Plaintiff's Rule 56 motion.

## I.    RELEVANT BACKGROUND TO PENDING MOTION

The facts as viewed in the light most favorable to Davis are as follows.

On or about December 10, 2008, Plaintiff issued the Tilmon Policy to Roosevelt Tilmon and Pearl Tilmon, which policy provided dwelling protection, other structures protection,

personal property protection, family liability protection, and guest medical protection. (ECF No. 1-2 at 3-8.) The effective dates of the Tilmon Policy were January 26, 2009 to January 26, 2010. (Id. at 7.) Under the Tilmon Policy, the insured persons were Roosevelt Tilmon, Pearl Tilmon and any relative or dependent person in their care that was a resident of the household. (ECF No. 1-2 at 40.)

The Tilmon Policy included the following exclusion for the family liability protection coverage:

> 1. We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
> a) such insured person lacks the mental capacity to govern his or her conduct;
> b) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
> c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.
> This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

(ECF No. 1-2 at 57.) In addition, the Tilmon Policy excluded other acts in the coverage for guest medical protection:

> 1. We do not cover any bodily injury intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
> a) such insured person lacks the mental capacity to govern his or her conduct;
> b) such bodily injury is a different kind or degree than intended or reasonably expected; or
> c) such bodily injury is sustained by a different person than intended or reasonably expected.
> This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

(Id. at 59.)

On or about September 21, 2012, Davis filed an action in the Aiken County (South Carolina) Court of Common Pleas against Roosevelt Tilmon, Mona Tilmon, and Anthony Curtis Tilmon (the "Underlying Lawsuit"). (See ECF No. 1.) In her complaint, Davis alleged the

following facts that were within the purview of the Tilmon Policy:

> In 2009, Davis and her minor daughter, K.K., were living in Aiken County, South Carolina. (ECF No. 1-1 at 1 ¶ 2.) During this time, Davis became friends with Mona Tilmon, who volunteered in March 2009 to take care of K.K. while Davis was at work. (Id. at 3 ¶¶ 10-11.) Thereafter, K.K. began staying with Mona Tilmon at her home located at 1001 Northbrook Drive in Aiken, South Carolina (the "Northbrook House"). (Id. at ¶¶ 11, 14.) During the time Mona Tilmon cared for K.K., the other residents at the Northbrook House were Roosevelt Tilmon and Anthony Curtis Tilmon ("Anthony Tilmon"). (Id. at ¶ 12.)
>
> On three occasions between March 25, 2009 and April 12, 2009, Anthony Tilmon engaged in the sexual battery of K.K. while she was in the care of Mona Tilmon. (Id. at 4 ¶ 20.) On one of the occasions, both Roosevelt Tilmon and Mona Tilmon left the home to go to a store. (Id. at 5 ¶ 22.) On another occasion, Mona Tilmon was asleep in the home while the sexual battery occurred. (Id.) And on a third occasion, Mona Tilmon was watching television in another room. (Id.) On at least one of the three occasions, Roosevelt Tilmon walked into the room while the sexual assault was taking place. (Id. at ¶ 24.) Following a criminal trial, a jury found Anthony Tilmon guilty of three counts of criminal sexual conduct with a minor, first degree, for which he is currently serving a thirty-five year prison sentence. (Id. at 4-5 ¶ 21.)

Based on these allegations, Davis alleged causes of action against Roosevelt Tilmon and Mona Tilmon for intentionally inflicting severe emotional distress on K.K.; for negligence, gross negligence, carelessness, recklessness, willfulness, or wantonness; for breach of their fiduciary duty to provide a safe environment for K.K.; for conspiracy to conceal their knowledge about Anthony Tilmon's sexual abuse of K.K.; and for negligently failing to recognize that Anthony Tilmon would act out the sexual abuse that he suffered as a child on K.K. (Id. at 6-13.) Davis further alleged claims against Anthony Tilmon for civil assault and battery, for false imprisonment, and for negligent failure to recognize that he would act out his own sexual abuse on K.K. (Id. at 11-13.)

In approximately November 2012, Plaintiff received a copy of the complaint in the Underlying Lawsuit. (ECF No. 23 at 2.) Plaintiff agreed to defend Roosevelt Tilmon and Mona Tilmon pursuant to a reservation of rights and retained counsel for them. (Id.) Plaintiff then

3

filed a declaratory judgment action in this court on March 14, 2013. (ECF No. 1.) Davis answered the complaint for declaratory judgment on April 12, 2013. (ECF No. 12.) Roosevelt Tilmon and Mona Tilmon failed to answer or otherwise respond to Plaintiff's complaint thereby resulting in the Clerk of Court entering default against them on May 6, 2013. (ECF No. 15.)

On August 26, 2013, Plaintiff filed its Rule 56 motion. (ECF No. 21.) On September 10, 2013, Davis filed an amended complaint in the Underlying Lawsuit which did not contain claims against Anthony Tilmon and only asserted causes of action against Roosevelt Tilmon and Mona Tilmon for negligence, gross negligence, recklessness, or carelessness and for breach of fiduciary duty. (ECF No. 23-1 at 6-8.) She then filed opposition to Plaintiff's Rule 56 motion on September 12, 2013, to which Plaintiff filed a reply in support of summary judgment on September 23, 2013. (ECF Nos. 23, 27.)

## II.     LEGAL STANDARD

A.     <u>Declaratory Judgment Actions</u>

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 287 (1995) (quoting <u>Pub. Serv. Comm'n of Utah v. Wycoff Co.</u>, 344 U.S. 237, 241 (1952)). Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases." <u>United Capitol Ins. Co. v. Kapiloff</u>, 155 F.3d 488, 493 (4th Cir. 1998). "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in

clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

B.     Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue

5

of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Cmty. Coll. of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

C.     General Principles of South Carolina Insurance Law

Under South Carolina law, insurance policies are subject to the general rules of contract construction. B.L.G. Enters., Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." Id. The court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. Id. "[I]n construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." Yarborough v. Phoenix Mut. Life Ins. Co., 225 S.E.2d 344, 348 (S.C. 1976). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." Poston v. Nat'l Fid. Life Ins. Co., 399 S.E.2d 770, 772 (S.C. 1990).

An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. S.C. Ins. Co. v. White, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). A policy clause extending coverage must be liberally construed in favor of coverage, while insurance policy exclusions are construed most strongly against the

insurance company, which also bears the burden of establishing the exclusion's applicability. M&M Corp. of S.C. v. Auto–Owners Ins. Co., 701 S.E.2d 33, 35 (S.C. 2010); Owners Ins. Co. v. Clayton, 614 S.E.2d 611, 614 (S.C. 2005). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." S.C. Farm Bureau Mut. Ins. Co. v. Wilson, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

"[E]xclusions in an insurance policy are always construed most strongly against the insurer." Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co., 663 S.E.2d 492, 495 (S.C. 2008) (internal citation omitted). However, even though "exclusions in a policy are construed against the insurer, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition." S.C. Farm Bureau Mut. Ins. Co. v. Dawsey, 638 S.E.2d 103, 104 (S.C. Ct. App. 2006) (citing B.L.G. Enters., 514 S.E.2d at 330). Moreover, the "court should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties." State Auto Prop. & Cas. Co. v. Brannon, 426 S.E.2d 810, 811 (S.C. Ct. App. 1992).

D. Coverage Questions, the Duty to Defend, and the Duty to Indemnify Under South Carolina Law

Under South Carolina law, questions of coverage and the duty to defend under an insurance policy generally are determined by the allegations of the complaint. See Jessco, Inc. v. Builders Mut. Ins. Co., No. 10-1215, 2012 WL 1035721, at *2 (4th Cir. Mar. 29, 2012). If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend. See City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund, 677 S.E.2d 574, 578 (S.C. 2009) (citation omitted). Although a determination of an insurer's duty to defend is dependent upon the insured's complaint, an analysis of this duty involves the allegations of the

7

complaint and not the specifically identified causes of action. Id. at 579; see also Collins Holding Corp. v. Wausau Underwriters Ins. Co., 666 S.E.2d 897, 899-900 (S.C. 2008). Moreover, an insurer's duty to defend may also be determined by facts outside of the complaint that are known by the insurer. See USAA Prop & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 798 (S.C. 2008). If an insured has no duty to defend, it will know that it has no duty to indemnify. See Am. S. Ins. Co. v. Moras Roofing, LLC, No. 2:09-1966-PMD, 2010 WL 2710588, at *4 (D.S.C. July 7, 2010).

Under South Carolina law, a liability insurer's duty to indemnify is determined by the findings of the fact finder in the underlying case. Ellett Bros., Inc. v. U.S. Fid. & Guar. Co., 275 F.3d 384, 388–89 (4th Cir. 2001) (citing Jourdan v. Boggs/Vaughn Contracting, Inc., 476 S.E.2d 708, 711 (S.C. Ct. App. 1996)). In other words, "[t]here is no obligation to defend until an action is brought and no obligation to indemnify until a judgment against the insured is obtained." See Howard v. Allen, 176 S.E.2d 127, 129 (S.C. 1970).

### III.   ANALYSIS

A.   Plaintiff's Arguments in Support of Summary Judgment

Plaintiff argues that it is entitled to summary judgment because Anthony Tilmon's sexual abuse of K.K. was not an occurrence triggering coverage under the Tilmon Policy. (ECF No. 21-1 at 7-8 (citing Mfrs. & Merchs. Mut. Ins. Co. v. Harvey, 498 S.E.2d 222, 224-26 (S.C. Ct. App. 1998) (finding that an occurrence is an accident and the sexual abuse of a child cannot be an accident when the intent to harm is inferred as a matter of law)).) Plaintiff further argues that even if the Underlying Lawsuit did establish an occurrence triggering coverage, coverage would be unavailable because the Tilmon Policy expressly excludes coverage for bodily injury resulting from intentional and criminal acts. (Id. at 9 (citing Harvey, 498 S.E.2d at 226).) In this vein, Roosevelt Tilmon and Mona Tilmon are not entitled to coverage because the complaint in the

8

Underlying Lawsuit alleges that they committed intentional acts, which acts exclude coverage "regardless of whether or not such insured person is actually charged with, or convicted of a crime."  (Id. at 17 (citing ECF No. 1-2 at 57, 59).)

Plaintiff argues that Anthony Tilmon's intentional and criminal acts also preclude coverage for Roosevelt Tilmon and Mona Tilmon pursuant to a joint obligations provision.  (Id. at 11-12 (referencing ECF No. 1-2 at 42) ("The terms of this policy impose joint obligations on the persons defined as an insured person.  This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person.").)  Acknowledging that South Carolina courts have not considered a joint obligations provision, Plaintiff nevertheless argues that there is sufficient case law supporting the proposition that "[b]ecause coverage for Anthony [] Tilmon is excluded under the policy's intentional and criminal acts exclusion, coverage for Roosevelt Tilmon and Mona Tilmon is likewise excluded under the policy's joint obligations provision."  (Id. at 12-13 (citing, e.g., Allstate Indem. Co. v. Riverson, No. 3:10-cv-05366 RBL, 2012 WL 2030099, at *3 (W.D. Wash. June 6, 2012) ("Finally, because [the daughter] is an insured person under the policy and her acts are excluded from coverage, the joint obligations clause applies.  This clause holds [the insured mother] responsible for the acts of her daughter and also excluded from coverage."); Moyer v. Allstate Ins. Co., No. 3:09-CV-1290, 2010 WL 3328035, at *8 (M.D. Pa. Aug. 20, 2010) ("[T]he policy clearly and unambiguously imposed upon [the son] and his mother joint obligations.  Therefore, we are constrained to conclude that [the insured mother] is not entitled to recover under the policy."); Allstate Ins. Co. v. Jordan, 16 S.W.3d 777, 781-82 (Tenn. App. Ct. 1999) (explaining that "[s]everal other courts in other jurisdictions have examined situations involving intentional acts by one insured and allegations of negligence by another insured and

9

have concluded that the determination of whether the policy precludes coverage for the action brought against the insureds turns on whether the policy imposes a joint obligation between insureds and the insurer or whether the policy was several, creating a separate contract with each insured . . .[and t]he policy language in the instant case specifically excluded coverage for intentional criminal acts of any insured person.")).)

Based on the foregoing, Plaintiff contends that it does not have a duty to defend either Roosevelt Tilmon or Mona Tilmon because the complaint in the Underlying Lawsuit does not bring the claim within coverage of the Tilmon Policy. (Id. at 18.) However, if the court does find that coverage exists for the Underlying Lawsuit, Plaintiff submits that a single limit of liability for $100,000.00 should apply. (Id. at 19-20.)

B.  Davis's Arguments Opposing Summary Judgment

In opposing Plaintiff's Rule 56 motion, Davis contends that there is a general principle in South Carolina insurance law that a policy exclusion for intentional acts will not bar coverage for a complaint alleging both intentional and negligent conduct. (ECF No. 23 at 7 (citing Harvey, 498 S.E.2d at 222).) Using this general principle as her foundation, Davis explains that her amended complaint in the Underlying Lawsuit only alleges claims for negligent conduct against Roosevelt Tilmon and Mona Tilmon and does not allege intentional or criminal acts by them. (Id. at 7, 19.) Therefore, coverage should exist for Roosevelt Tilmon and Mona Tilmon because their negligent acts constitute an occurrence under the Tilmon Policy. (Id. at 9.) In this regard, Davis argues that because negligence claims are not excluded by the Tilmon Policy's criminal act exclusion, Plaintiff is bound to provide a defense for Roosevelt Tilmon and Mona Tilmon and "if a jury returns a verdict against them on the negligence cause of action, to indemnify them." (Id. at 7.) To further emphasize this, Davis points out that Roosevelt Tilmon and Mona

10

Tilmon "were never charged criminally under any statute . . . [and] were never even investigated for potentially having broken the law." (Id. at 20.)

Davis next argues that the joint obligations provision does not bar coverage for Roosevelt Tilmon and Mona Tilmon because the provision "merely requires the other insureds to comply with the same policy obligations as the named insured" instead of imposing "joint liability for the criminal acts of an insured." (Id. at 11 (citing McCracken v. Gov't Emps. Ins. Co., 325 S.E.2d 62, 64 (S.C. 1985)).) As a result, Davis asserts that the joint obligations provision should not be interpreted to exclude from coverage the negligent acts of Roosevelt Tilmon and Mona Tilmon. (Id. at 11-12.) Moreover, Davis asserts that the joint obligations provision in the Tilmon Policy is ambiguous and should not be read to bar claims against Roosevelt Tilmon and Mona Tilmon when those claims are separate and independent from any criminal act that may have been committed by Anthony Tilmon. (Id. at 14-17.)

Based on the foregoing, Davis requests that the court deny summary judgment because Plaintiff has a duty to defend Roosevelt Tilmon and Mona Tilmon. (Id. at 21.)

C.      The Court's Review

Upon review, the court agrees with Davis that the allegations in the Underlying Lawsuit against Roosevelt Tilmon and Mona Tilmon are for negligent conduct and not for intentional conduct. (See ECF No. 23-1.) Specifically, Roosevelt Tilmon and Mona Tilmon are not alleged to have intended the harm to K.K. through their negligent supervision and breach of fiduciary duty. (Id.) As a result, the court finds that the negligent acts of Roosevelt Tilmon and Mona Tilmon are an occurrence under the Tilmon Policy. However, to determine whether the Tilmon Policy provides coverage for claims asserted in the Underlying Lawsuit and requires Plaintiff to defend or indemnify Roosevelt Tilmon and Mona Tilmon, the court must ascertain the extent to

11

which the joint obligations provision holds Roosevelt Tilmon and Mona Tilmon responsible for the intentional and criminal acts of Anthony Tilmon.

The joint obligations provision in the Tilmon Policy states that "[t]he terms of this policy impose joint obligations on the persons defined as an insured person . . . [and] [t]his means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person." (ECF No. 1-2 at 42.) The parties agree that South Carolina courts have not interpreted an insurance policy containing a joint obligations provision. (See, e.g., ECF Nos. 23 at 15, 27 at 3.) However, other jurisdictions have interpreted joint obligations policy language identical to that in this case and have held that the joint obligation provision renders the criminal acts exclusion applicable to claims for negligence against other insureds. See, e.g., Allstate Ins. Co. v. Berge, 522 F. Supp. 2d 1180, 1187 (D. N.D. 2007) ("Thus, the claims of negligence asserted against the Streepers are barred by the intentional or criminal acts exclusion in the Allstate condominium owners policy, particularly when read in conjunction with the joint obligations provision in the policy."); Allstate Ins. Co. v. Ervin, C/A No. 05–02800, 2006 WL 2372237, at *5 (E.D. Pa. Aug. 14, 2006) ("Thus, the joint obligations clause attributes the simple assault committed by Doug Ervin and Daniel Ervin to William and Wilma Ervin, and Allstate does not have a duty to defend the Ervins pursuant to the criminal acts exclusion."); Allstate Ins. Co. v. Pond Bar, 1995 WL 568399, at *11 (D. Minn. May 19, 1995); Castro v. Allstate Ins. Co., 855 F. Supp. 1152, 1154–55 (S.D. Cal. 1994) ("Because Carmelita Cook's alleged liability in the underlying Castro lawsuit arose out of the criminal and/or intentional acts of Ariel Cook—an "Insured Person" under the Policy—the court determines the Policy did not provide coverage as a matter of law."); Allstate Ins. Co. v. Lobracco, 1992 WL 356270, at *3-4 (Ohio Ct. App. Nov. 24, 1992); Allstate Ins. Co. v.

McCranie, 716 F. Supp. 1440, 1447–49 (S.D. Fla. 1989).[1]

In analyzing the Tilmon Policy's joint obligations provision, the court adopts the reasoning in the above decisions in finding that the language in the joint obligations provision is plain and unambiguous - where one insured's acts excluded coverage, those acts are binding upon the other insured and preclude coverage for any claims against the other insured as well. As applied in this case, the joint obligations provision attributes the sexual battery committed on K.K. by Anthony Tilmon to Roosevelt Tilmon and Mona Tilmon. As a result, the intentional and criminal acts of Anthony Tilmon are binding upon all other persons defined as "insured persons," which clearly and unequivocally include Roosevelt Tilmon and Mona Tilmon. Accordingly, because of the joint obligations provision of the Tilmon Policy, Plaintiff does not have a duty to defend Roosevelt Tilmon and Mona Tilmon.

## IV.  CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the motion for summary judgment of Plaintiff Allstate Indemnity Company. (ECF No. 21.) Accordingly, the court declares that Deluxe Homeowners Insurance Policy No. 9 30 260240 01/26 issued to Roosevelt Tilmon by Plaintiff does not provide coverage for the claims asserted in the Underlying Lawsuit. Plaintiff does not have any duty to either provide Roosevelt Tilmon or Mona Tilmon with a defense in the Underlying Lawsuit or indemnify Roosevelt Tilmon or Mona

---

[1] In Berge, the court noted that "at least one state court has interpreted an identical criminal exclusion provision and joint obligation provision as excluding coverage only as to the insured who committed the intentional or criminal act." Berge, 522 F. Supp. 2d at 1187 (citing Wasik v. Allstate Ins. Co., 813 N.E.2d 1152, 1157–1158 (Ill. Ct. App. 2004)). "The Wasik court stated that exclusionary clauses are to be construed narrowly, and the joint obligation provision is susceptible to multiple interpretations and therefore ambiguous." Id. (citing Wasik, 813 N.E.2d at 1158). "The Wasik court held that the joint obligation provision does not exclude coverage for an innocent insured when another insured has intentionally or criminally caused a loss." Id. (citing Wasik, 813 N.E.2d at 1158). Like the Berge court, this court declines to follow the reasoning in Wasik.

Tilmon for the amount of any judgment and other relief that might be entered against Roosevelt Tilmon or Mona Tilmon in the Underlying Lawsuit. As a result of the foregoing, Plaintiff is also entitled to summary judgment on AmyMelissa Davis's counterclaim for coverage under the Tilmon Policy.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 21, 2014
Greenville, South Carolina